U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2016 DEC 29 AM 8:08

CLERK

BY ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| JANE O'NEILL,<br><br>Plaintiff,<br><br>v.<br><br>RUTLAND COUNTY STATE'S ATTORNEYS OFFICE and THE DEPARTMENT OF STATE'S ATTORNEYS AND SHERIFFS,<br><br>Defendants. | Case No. 2:16-cv-196 |

## OPINION AND ORDER GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS
(Doc. 10)

This matter came before the court on October 12, 2016 for oral argument on the partial motion to dismiss filed by Defendants Rutland County State's Attorneys Office (the "Rutland SAO") and the Department of State's Attorneys and Sheriffs (the "Department") (collectively, "Defendants") (Doc. 10). Pursuant to Fed. R. Civ. P. 12(b)(1) and the Eleventh Amendment to the U.S. Constitution, Defendants seek dismissal of all state law claims asserted by Plaintiff Jane O'Neill, including her civil conspiracy, constructive discharge, quantum meruit, and unjust enrichment claims as well her claim that Defendants violated Vermont's Fair Employment Practices Act ("VFEPA"), 21 V.S.A. § 495(a)(7) and (8).[1] Plaintiff opposes the motion. On November 14, 2016, the parties filed post-hearing supplemental memoranda, whereupon the court took the pending motion under advisement.

---

[1] Originally, Defendants sought dismissal of all of Plaintiff's claims, including her claim that Defendants violated the Equal Pay Act ("EPA") set forth in the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201(d)(1). Defendants have amended their motion to exclude Plaintiff's EPA claim. (Doc 13 at 9.)

John Paul Faignant, Esq. and Marie Peck Fabian, Esq. represent Plaintiff. Assistant Attorneys General Kate T. Gallagher and Bartholomew J. Gengler represent Defendants.

## I. Factual Background.

The following facts are derived from Plaintiff's Complaint and are accepted as true for the purpose of this motion. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007) ("[A] judge ruling on a defendant's motion to dismiss a complaint must accept as true all of the factual allegations contained in the complaint.") (internal quotation marks omitted).

In 2009, the Rutland SAO hired Plaintiff as a deputy state's attorney. She remained employed in that position through August of 2014. When Plaintiff was hired, her salary was established at the "entry level" by the Rutland SAO and the Department. (Doc. 1 at 3, ¶ 14.) Plaintiff was allegedly told that her level of compensation was "not negotiable." *Id.* Despite Plaintiff's repeated requests, Rutland County State's Attorney Marc Brierre refused to discuss her compensation with her during her employment.

Plaintiff's position as a deputy state's attorney required her to routinely work fifty to sixty hours per week, and to be on-call every night for one week per month from 4:30 p.m. until 8:30 a.m. She was not compensated for her on-call hours. Defendants were allegedly aware that Plaintiff was working in excess of forty hours per week, but did not keep track of her hours worked and would not authorize her paycheck to be released unless she signed an affidavit stating that she did not work in excess of forty hours. Plaintiff did not receive compensation in addition to her salary for the excess hours she worked, although a male deputy state's attorney allegedly received additional compensation on this basis.

In 2011, the Rutland SAO hired "John Doe" as a deputy state's attorney to perform essentially the same work as Plaintiff. John Doe's salary was set at a rate approximately 26% higher than Plaintiff's. State's Attorney Brierre allegedly refused to discuss John Doe's compensation with Plaintiff, including whether they were both paid the same amount.

Following John Doe's hire, Plaintiff alleges that State's Attorney Brierre "embarked on a course of retaliatory conduct to demean and marginalize" Plaintiff's job duties, "including assigning much lesser tasks [to her], which should have gone to the new[,] less experienced person" notwithstanding Plaintiff's "overwhelming existing caseload." *Id.* at 5, ¶ 25. Plaintiff was also not included in important office function meetings and procedures and State's Attorney Brierre "lashed out" at her whenever she inquired about her salary. *Id.* State's Attorney Brierre directed Plaintiff's salary inquiries to Bram Kranichfeld, Esq., the executive director of the Department. Attorney Kranichfeld was "non-committal" in response to Plaintiff's inquiries and directed her to speak with State's Attorney Brierre. *Id.* at 5, ¶ 28.

In 2013, the Rutland SAO hired "Jane Doe" as a deputy state's attorney to perform essentially the same work as Plaintiff and John Doe. Jane Doe's salary was set at a rate approximately 25% lower than John Doe's.

In July of 2014, Plaintiff discovered that John Doe had earned approximately $14,000 more than her for each year since his 2011 hire. Plaintiff alleges that Defendants knew that she was being discriminated against on the basis of sex, and that she was being paid less than her male coworkers "for equal work that required equal skill, effort[,] and responsibility and [that] was performed under substantially similar working conditions." *Id.* at 6, ¶ 32. Plaintiff further alleges that "[a]s the salary disparity continued over the years[,] it perpetuated a sex based wage differential" between Plaintiff and John Doe. *Id.* at 6, ¶ 33. On at least two occasions, State's Attorney Brierre "lost his temper over [Plaintiff's] pressing him as to her pay status, to the point where [Plaintiff] believed [State's Attorney Brierre] would fire her if she pressed further." *Id.* at 6, ¶ 34. Plaintiff resigned at the end of July 2014 because the "working conditions had become so intolerable, she felt she had no other choice but to resign." *Id.* at 7, ¶ 35.

Plaintiff's Complaint alleges the following causes of action: Count I (violation of the EPA and VFEPA); Count II (conspiracy to violate the EPA and VFEPA); Count III (retaliation); Count IV (constructive discharge); Count V (quantum meruit); and Count VI (unjust enrichment). Citing Eleventh Amendment immunity, Defendants seek

3

dismissal of all claims set forth in Plaintiff's Complaint, except for her EPA claim set forth in Count I.

## II. Conclusions of Law and Analysis.

### A. Standard of Review.

A case is properly dismissed for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) if the district court lacks the statutory or constitutional power to adjudicate it. *See Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011) (citing *Maloney v. Soc. Sec. Admin.*, 517 F.3d 70, 74 (2d Cir. 2008)). Generally, on a 12(b)(1) motion, the "plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). However, in cases where a governmental entity asserts the Eleventh Amendment as the basis of dismissal, the burden falls to that entity to prove its entitlement to immunity from suit. *See Woods v. Rondout Valley Cent. Sch. Dist. Bd of Educ.*, 466 F.3d 232, 237 (2d Cir. 2006) (joining other circuit courts in "holding that the governmental entity invoking the Eleventh Amendment bears the burden of demonstrating that it qualifies as an arm of the state entitled to share in its immunity").

### B. Whether Defendants Are Entitled to Eleventh Amendment Immunity.

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "Although the text of the amendment speaks only of suits against a state by persons who are not citizens of that state, the Supreme Court has interpreted the Eleventh Amendment to extend to suits by all persons against a state in federal court." *Mancuso v. N.Y. State Thruway Auth.*, 86 F.3d 289, 292 (2d Cir. 1996).

"It has long been settled that the reference to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities." *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). As a result, "when the action is in

4

essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Id.* (citation and internal quotation marks omitted).

Defendants argue that they are "arms of the state" and that Plaintiff's state law claims against them therefore cannot be litigated in federal court. *See Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 540-41 (2002) (affirming that "the Eleventh Amendment bars the adjudication of pendent state law claims against nonconsenting state defendants in federal court") (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 120 (1984)). Plaintiff contends that Defendants are not "arms of the state," and are more appropriately considered municipal corporations or some other form of governmental entity not entitled to Eleventh Amendment protection.

"While, on the one hand, it is well established that even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment[;] on the other hand, courts have consistently refused to construe the Eleventh Amendment to afford protection to political subdivisions such as counties and municipalities, even though such entities exercise a slice of state power." *Richards v. State's Attorneys Office*, 40 F. Supp. 2d 534, 536 (D. Vt. 1999) (citations, alterations, and internal quotation marks omitted). Eleventh Amendment immunity thus depends on whether a defendant is an "arm of the state." *See Mancuso*, 86 F.3d at 292 ("Although the Eleventh Amendment does not apply to suits against counties, municipal corporations, and other political subdivisions, [an entity] is entitled to immunity if it can demonstrate that it is more like 'an arm of the State,' such as a state agency, than like 'a municipal corporation or other political subdivision.'") (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)).

In determining whether an entity is an "arm of the state," a court must analyze "the relationship between the State and the entity in question." *Regents of the Univ. of Cal.*, 519 U.S. at 429.

5

> Ultimately, of course, the question whether a particular state agency has the same kind of independent status as a county or is instead an arm of the State, and therefore "one of the United States" within the meaning of the Eleventh Amendment, is a question of federal law. But that federal question can be answered only after considering the provisions of state law that define the agency's character.

*Id.* at 429 n.5.

> In the Second Circuit, six "*Mancuso* factors" guide the court's inquiry:
>
> (1) how the entity is referred to in the documents that created it; (2) how the governing members of the entity are appointed; (3) how the entity is funded; (4) whether the entity's function is traditionally one of local or state government; (5) whether the state has a veto power over the entity's actions; and (6) whether the entity's obligations are binding upon the state.

*Mancuso*, 86 F.3d at 293. "If these factors all point in one direction, then a court's inquiry is complete." *Woods*, 466 F.3d at 240. If, however, the *Mancuso* factors provide mixed results, the court must focus "on the twin reasons for the Eleventh Amendment: (1) protecting the dignity of the state, and (2) preserving the state treasury." *Id.* (citing *Mancuso*, 86 F.3d at 293). "If the outcome still remains in doubt, then whether a judgment against the governmental entity would be paid out of the state treasury generally determines the application of Eleventh Amendment immunity." *Id.* at 241.

Plaintiff acknowledges the *Mancuso* factors, but contends that the Vermont Supreme Court's decision in *In re Election Petitions*, 2016 VT 7, 136 A.3d 213 controls the outcome of whether Eleventh Amendment immunity is available to Defendants because it holds that the Rutland SAO is a municipal entity and the Department is a political subdivision of the State of Vermont. In *Election Petitions*, the Vermont Supreme Court did not address whether Defendants are "arms of the state" for purposes of Eleventh Amendment immunity. Instead, that court determined only whether "either the individual state's attorneys or the legislatively created Vermont Department of State's Attorneys and Sheriffs, or some combination thereof, are municipal employers" for purposes of collective bargaining under Municipal Employee Relations Act ("MERA").[2]

---

[2] Under MERA, a "municipal employer" is defined as a "city, town, village, fire district, lighting district, consolidated water district, housing authority, union municipal district, or any of the

6

*Election Petitions*, 2016 VT 7, ¶ 3. The case thus turned on whether either the individual state's attorneys or the Department, or some combination thereof, satisfied a specific statutory definition of "employer."

The present case does not mandate this same inquiry. *Election Petitions* thus does not determine whether, under federal law, Defendants are "arms of the state" for purposes Eleventh Amendment immunity. *See Regents of the Univ. of Cal.*, 519 U.S. at 429 n.5 ("[T]he question [of] whether a particular state agency has the same kind of independent status as a county or is instead an arm of the State . . . is a question of federal law."). The *Mancuso* factors therefore remain the controlling test.[3]

Application of the first *Mancuso* factor, which asks how the entities are identified in their documents of origin, reveals that the office of "State's Attorney" is established by the Vermont Constitution. *See* Vt. Const. ch. II, § 50 ("State's Attorneys shall be elected by the voters of their respective districts as established by law."). However, as Plaintiff points out, "[t]he constitution merely provides the date on which the State's Attorneys shall be elected and the terms for which they shall serve." *Office of State's Attorney of Windsor Cty. v. Office of Attorney Gen.*, 409 A.2d 599, 602 (Vt. 1979). The powers and duties of a state's attorney are established by a Vermont statute governing county officers. *See* 24 V.S.A. § 361(a) ("A State's Attorney shall prosecute for offenses committed within his or her county, and all matters and causes cognizable by the Supreme and Superior Courts on behalf of the State, file informations and prepare bills of indictment, deliver executions in favor of the State . . . , and take measures to collect fines and other demands or sums of money due to the State or county."). The Rutland SAO is therefore created by Vermont's Constitution and governed by state statute, although it operates primarily on a county-wide basis.

---

political subdivisions of the State of Vermont which employs five or more employees[.]" *Election Petitions*, 2016 VT 7, ¶ 4 (quoting 21 V.S.A. § 1722(13)).

[3] *Election Petitions*, however, remains relevant in light of the Vermont Supreme Court's description of Defendants' organizational structures and functions. *See Woods*, 466 F.3d at 237 (recognizing that courts make "necessary reference to state law" in determining under federal law whether a particular governmental entity is an arm of the state for Eleventh Amendment purposes).

The Department is created by statute and "consist[s] of the 14 State's Attorneys and 14 sheriffs." *See* 24 V.S.A. § 367(a). By virtue of its composition, the Department operates on a state-wide as opposed to a county-wide basis. In describing the duties of the executive director of the Department, § 367 requires that the executive director "prepare and submit all budgetary and financial matters and forms which are required of the head of a department of State government[.]" *Id.* § 367(c).

As both Defendants are created by either the Vermont Constitution or Vermont statute and as they are governed by Vermont law, the first *Mancuso* factor weighs in favor of finding that Defendants are "arms of the state."

The second *Mancuso* factor examines how the governing members of the entities are appointed. The Vermont Constitution provides that state's attorneys are "elected by the voters of their respective districts[.]" *See* Vt. Const. ch. II, § 50; *see also Town of Stowe v. Lamoille Cty.*, 362 A.2d 159, 161 (Vt. 1976) ("The Vermont county is a unit of special functions. It operates as an electoral district for assistant judges, state's attorneys, and sheriffs, as well as, in some cases, state senators and probate judges."). Because state's attorneys are elected in county elections, this weighs against finding they are "arms of the state." *Compare Woods*, 466 F.3d at 244 (finding that the second *Mancuso* factor weighs against immunity where board of education members are elected locally by voters in each school district), *with Mancuso*, 86 F.3d at 295 (concluding that appointment of governing board members by the Governor of New York weighs in favor of immunity).

The Department is governed by an executive committee of state's attorneys and an executive committee of sheriffs, who in turn appoint an executive director. Notwithstanding the state-wide scope of the Department's mandate, the Department's membership, including its executive committees and executive director, consists entirely of individuals elected in county elections without any direct involvement from the State of Vermont. *See Leitner v. Westchester Cmty. Coll.*, 779 F.3d 130, 138-39 (2d Cir. 2015) (concluding that entity seeking to assert Eleventh Amendment immunity had not met its burden with regard to the second *Mancuso* factor where the majority of the board's

8

governing members were selected at the local level). The second *Mancuso* factor thus weighs against a finding of Eleventh Amendment immunity for both Defendants.

The third *Mancuso* factor asks how the entities are funded. Under the statutory scheme for state's attorneys and the Department,[4] their respective budgets are derived directly and exclusively from funds authorized and dispersed by the Vermont Legislature as part of the state budget. *See* 24 V.S.A. § 367(c); *see also Election Petitions*, 2016 VT 7, ¶ 12 ("The budget is then presented to the Legislature as part of the entire state government budget."); *In re Wakefield*, 177 A. 319, 323 (Vt. 1935) ("It is the state, and not the county, that pays [a state's attorney's] salary and official expenses.").

Because Defendants are funded exclusively by the State of Vermont, the third *Mancuso* factor weighs heavily in favor of finding Eleventh Amendment immunity for both Defendants. *See McGinty v. New York*, 251 F.3d 84, 97 (2d Cir. 2001) (finding that this factor weighs in favor of immunity even where the state was not the sole funder of the entity because it made "significant payments" to the entity to cover benefits and expenses).

The fourth *Mancuso* factor asks whether the entities' functions are traditionally one of state or local government. The powers and duties exercised by a state's attorney in the performance of his or her position are traditionally those of state government. *See* Vt. Const. ch. II, § 39 (mandating that "[a]ll prosecutions shall commence, *By the authority of the State of Vermont*" and that "[a]ll indictments shall conclude with these words, *against the peace and dignity of the State*."); *see also Office of State's Attorney of Windsor Cty.*, 409 A.2d at 601 (noting that "the statutory grant clearly authorizes the State's Attorney to act on behalf of the State" as a non-exclusive "arm of the state

---

[4] The executive director of the Department "drafts a proposed budget that includes wages and benefits for the deputy state's attorneys, victim advocates, and secretaries working in the SAOs and covers operating expenses for the SAOs" and submits it to the governor for approval. *Election Petitions*, 2016 VT 7, ¶ 12. "The budget is then presented to the Legislature as part of the entire state government budget." *Id.* The executive director may challenge the governor's budget determinations and seek funding directly from the Legislature. "Once approved by the Legislature, the budget is provided to the Department as a lump sum, which is then divided among the counties." *Id.*

government to act with regard to initiating criminal prosecutions"); *Wakefield*, 177 A. at 323 ("A state's attorney in this state is not merely a prosecuting officer in the county in which he is elected. He is also an officer of the state, in the general matter of the enforcement of the criminal law."). Indeed, "there is little question that when prosecuting a criminal matter, a State's Attorney is acting as a representative of the State." *Bethea v. Plusch*, 2011 WL 5967180, at *5 (D. Vt. Nov. 29, 2011); *see also Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988) ("When prosecuting a criminal matter, a district attorney . . . represents the State not the county.").

The Department "oversees the administration, budget, information technology, and many human resource services for the SAOs" in the State of Vermont. *See Election Petitions*, 2016 VT 7, ¶ 12; 24 V.S.A. § 367(c). Its executive director is "involved in the legislative process: monitoring and providing input on legislation, testifying on legislation, and generally acting as an advocate for the SAOs and sheriffs' offices"; administers the annual training program for SAO employees; and has the authority to adopt personnel regulations applicable to SAO employees. *See Election Petitions*, 2016 VT 7, ¶ 13; *see also* 24 V.S.A. § 367(c). In this manner, the Department furthers the business of the State of Vermont by assisting with the administrative needs of the SAOs. *See, e.g., McGinty*, 251 F.3d at 98 ("Although the Retirement System does not service state employees exclusively, it assists in the business of the state by enabling the state to meet its pension and benefits obligations, and immunity should accordingly be extended to the Retirement System.").

As both Defendants perform functions that either are traditionally those of state governments or are in furtherance of State of Vermont business, the fourth *Mancuso* factor also weighs in favor of granting Defendants Eleventh Amendment immunity.

The fifth *Mancuso* factor examines whether the State of Vermont has veto power over the actions of the entities in question. Although it "exerts significant authority" over the SAOs, the State of Vermont does not have veto power over their actions. *See Richards*, 40 F. Supp. 2d at 537 (citing *Office of State's Attorney of Windsor Cty.*, 409 A.2d at 601-02). Similarly, although the Vermont Legislature exerts significant

10

control over the Department, both in enacting the laws enforced by the state's attorneys and by controlling the Department's budget, this "does not unequivocally equate to veto authority, which implies the power to halt a decision, however lawful, for no reason other than disagreement with the choice made." *Woods*, 466 F.3d at 248.

"The fifth *Mancuso* factor looks for evidence of the state's authority actually to veto the decisions" of Defendants. *Woods*, 466 F.3d at 248. As the State of Vermont lacks such authority, this factor weighs against a finding of immunity for both Defendants.

The final *Mancuso* factor requires the court to determine whether Defendants' financial obligations are binding upon the state. Plaintiff's citation to the State Liability Self-Insurance Fund[5] as evidence that any judgment recovered against Defendants would not come *directly* from the State of Vermont is misplaced. As the Supreme Court has observed:

> [W]ith respect to the underlying Eleventh Amendment question, it is the entity's potential legal liability, rather than its ability or inability to require a third party to reimburse it, or to discharge the liability in the first instance, that is relevant. Surely, if the sovereign State of California should buy insurance to protect itself against potential tort liability to pedestrians stumbling on the steps of the State Capitol, it would not cease to be "one of the United States."

*Regents of the Univ. of Cal.*, 519 U.S. at 431. Because the operating budgets of both Defendants are derived exclusively from the State of Vermont, and no other funding source is apparent, payment of Defendants' financial obligations is ultimately the responsibility of the State of Vermont. This *Mancuso* factor therefore also weighs in favor of finding Defendants are arms of the state.

While the majority of the *Mancuso* factors weigh in favor of finding Eleventh Amendment immunity, because all of the *Mancuso* factors do not "point in one direction," the court must examine the "twin reasons" for the Eleventh Amendment: (1) protecting the dignity of the state and (2) preserving the state treasury. *Woods*,

---

[5] Vermont's self-insurance statutory provision requires that all covered entities "contribute to the Fund." 29 V.S.A. § 1406(c).

466 F.3d at 240. The Supreme Court has held that the integrity of a state's fisc is entitled to "dispositive weight." *See Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 48-49 (1994).

Here, even if the dignity of the State of Vermont would not be offended if Defendants were forced to litigate Plaintiff's state law claims in federal court, because any money judgment against Defendants would risk exposing the State of Vermont's fisc to liability, this factor is dispositive in finding that Defendants are entitled to Eleventh Amendment immunity. *See Mancuso*, 86 F.3d at 293 (explaining that "'the vulnerability of the State's purse [is] the most salient factor'" and that "[i]f all the elements are evenly balanced, this concern will control") (quoting *Hess*, 513 U.S. at 48). The court therefore GRANTS Defendants' partial motion to dismiss Plaintiff's state law claims against them.

### C. Whether Plaintiff May Assert a Civil Conspiracy to Violate the EPA.

Count II of Plaintiff's Complaint alleges that Defendants were involved in a civil conspiracy under the common law of the State of Vermont to violate the EPA and the VFEPA.[6] Because Defendants are entitled to Eleventh Amendment protection on all of Plaintiff's state law claims, Plaintiff's civil conspiracy claim, insofar as it pertains to her VFEPA claim, must be dismissed. *See Pennhurst*, 465 U.S. at 120 ("[N]either pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment.").

Plaintiff's civil conspiracy claim as part of her EPA claim warrants further scrutiny. Plaintiff argues that under this court's decision in *Saunders v. Morton*, her claim for civil conspiracy should not be dismissed because it could provide a theory of liability for the substantive allegations of her EPA claim. *See Saunders v. Morton*,

---

[6] Plaintiff's Complaint states that her civil conspiracy claim in Count 2 is brought "under the common law of the State of Vermont." (Doc. 1 at 1, ¶ 2.) Plaintiff's Complaint cites to no other legal basis for this claim. Plaintiff also asserts that she is "entitled to pursue her conspiracy claim under the auspices of a 42 U.S.C. § 1983 claim." (Doc. 15 at 17.) She has not, however, cited § 1983 in her Complaint and may not amend her Complaint in an opposition to a motion to dismiss. *See, e.g., K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209 (S.D.N.Y. 2013) ("Plaintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to Defendants' motion to dismiss."). Instead, if Plaintiff wishes to pursue such a theory, she must seek leave to amend her Complaint pursuant to Fed. R. Civ. P. 15(a).

2011 WL 1135132, at *9-11 (D. Vt. Feb. 17, 2011), *report and recommendation adopted*, 2011 WL 1114416 (D. Vt. Mar. 24, 2011) (noting that "[i]t is not entirely clear under Vermont law whether the tort of civil conspiracy constitutes an independent cause of action" but that this court "has issued decisions upon parties' claims of civil conspiracy in which it has been assumed that the claim constitutes an independent cause of action in Vermont"). She points out that since 1840, Vermont has recognized a cause of action for civil conspiracy citing *Sheple & Warner v. Page*, 12 Vt. 519 (1840).

Defendants respond that the weight of more recent authority does not support a separate cause of action for a civil conspiracy. They make a persuasive argument for dismissal of this claim on the grounds that the relief Plaintiff seeks through a civil conspiracy cause of action is not authorized by the EPA.

At this nascent stage of the proceedings, the court declines to dismiss Plaintiff's civil conspiracy claim insofar as it relates to her EPA claim for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Defendants have not moved to dismiss on this basis, and Plaintiff has not yet been afforded an opportunity to address Defendants' argument that the relief she seeks through her civil conspiracy claim is not authorized by the EPA.

## CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' partial motion to dismiss Count I and Count II insofar as they include Plaintiff's VFEPA claim, and Counts III-VI on Eleventh Amendment immunity grounds. (Doc. 10.) Plaintiff may re-file those claims in state court. Plaintiff's EPA claim as set forth in Count I and her civil conspiracy claim set forth in Count II insofar as it relates to her EPA claim are not dismissed and shall remain pending in this court.
SO ORDERED.

Dated at Burlington, in the District of Vermont, this 28th day of December, 2016.

Christina Reiss, Chief Judge
United States District Court